UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEIU HEALTHCARE MICHIGAN
f/k/a SEIU Local 79,
    Plaintiff,

v.                                     Case No. 09-13215
                                       Honorable Patrick J. Duggan

ST. MARY'S ACQUISITION CO.,
INC., d/b/a ST. MARY'S NURSING HOME,
    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 27, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff SEIU Healthcare Michigan ("SEIU") filed this action pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), seeking to confirm an arbitration award that overturned the dismissal of SEIU member Angelia McCurrie from her employment with Defendant St. Mary's Acquisition Company, Inc., doing business as St. Mary's Nursing Home (collectively "St. Mary's"). On February 14, 2010, SEIU filed a motion for summary judgment asking the Court to confirm the arbitrator's award and award attorneys' fees and costs to SEIU based on St. Mary's refusal to comply with the award. On February 16, 2010, St. Mary's filed a motion for summary judgment asking the Court to vacate the arbitrator's award. Both motions have been fully briefed and the Court held a motion hearing on May 26, 2010. For the reasons

that follow, the Court denies SEIU's motion and grants St. Mary's motion.

**Background**

In August 2006, Angelia McCurrie ("McCurrie") began working as a certified nursing assistant at St. Mary's which is a long term care facility and rehabilitation center. Throughout her employment at St. Mary's, McCurrie was a member of a bargaining unit of employees represented by SEIU, a labor organization.

SEIU and St. Mary's are parties to a collective bargaining agreement ("CBA") which was effective from January 26, 2007, through January 25, 2010. (Doc. 17, Ex. A.) The CBA provides for arbitration of "grievances" arising thereunder and states that the arbitrator's decision "shall be final and binding . . . if within [the] scope of his authority as outlined [therein]." (*Id*. at Art. XV § 3.) The CBA defines a "grievance" as "a dispute, claim or complaint arising during the term of this Labor Agreement . . . limited to matters of interpretation and application of the contract, including all disciplinary action taken by the Employer." (*Id*. § 1.)

As relevant to the pending matter, the CBA places the following restriction on the arbitrator's power: "The Arbitrator shall have no power to substitute their [sic] discretion for the Employer's discretion in cases where the Employer is given sole discretion to act by this Agreement or by any supplement or amendment thereto." (*Id*. § 3.) Article VIII of the CBA reserves to St. Mary's "all rights, powers and authority inherent in and/or customarily exercised by management." (*Id*. at Art. VIII § 1.) With respect to "[s]uch prerogatives, rights, powers, authorities and functions," the CBA includes without

limitation:

> the sole and exclusive rights to:
>
> 1. Hire, promote, demote, layoff, assign, transfer, suspend, discharge and discipline employees for just cause.
>
> . . .
>
> 12. Establish[,] post and enforce reasonable rules and regulations governing the conduct and acts of employees during working hours.

(*Id.*)

St. Mary's has set forth rules and regulations governing its employees' conduct and the punishment for violations of these rules and regulations in its Employee Handbook. (Doc. 17, Ex. B.) As relevant to this proceeding, the Employee Handbook prohibits employees from "sleep[ing] on the job." (*Id.* at 21.) This offense is among twenty-six (26) offenses that the Employee Handbook provides "will result in **IMMEDIATE TERMINATION (FIRST OFFENSE)** . . ." (*Id.* at 21-22 (emphasis in original).)

McCurrie was on duty to work at St. Mary's from 11:00 p.m. on December 20, 2007, through the morning of December 21, 2007. (Doc. 17, Ex. C at 4.) Supervisors reported to Katherine Bruss, St. Mary's former Acting Director of Nursing, that during this shift McCurrie improperly performed an assignment regarding a "firewatch" she was assigned to make and record, disobeyed an instruction to stay at her assignment on the facility's east wing, and was sleeping at a nursing station during her shift. (*Id.* at 3.)

Based only on the last offense, Bruss made the decision to discharge McCurrie. (*Id*.) However, the "writeup" that includes this offense and provides for McCurrie's discharge, also lists violations of work rules based on McCurrie's alleged failure to perform an assignment and follow instructions.[1] (*Id*. at 7.) SEIU filed a grievance with respect to McCurrie's discharge.

Following a hearing, an arbitrator found evidence suggesting that St. Mary's arbitrarily and unreasonably applied its rules to McCurrie except with respect to the allegation that McCurrie was sleeping on the job. (*Id*. at 17-21.) The arbitrator found that St. Mary's proved by a preponderance of the evidence that McCurrie was sleeping on the job during the shift in question. (*Id*. at 23.) Although acknowledging that St. Mary's Employee Handbook lists sleeping on the job as an offense subject to immediate discharge, the arbitrator concluded that mitigating factors rendered this penalty inappropriate in McCurrie's case. (*Id*.) The arbitrator therefore concluded that the discharge should be set aside and reduced to a third-day suspension. (*Id*. at 24.)

On August 17, 2009, after St. Mary's refused to comply with the arbitration award and reinstate McCurrie, SEIU filed the pending lawsuit asking the court to confirm the award. Alleging that St. Mary's refusal to comply with the arbitrator's award constitutes

---

[1]As summarized by the arbitrator, the writeup listed the following violations, referencing where applicable the number of the offense as identified in St. Mary's Employee Handbook: "#10 Employee will not sleep on job"; "#4 Failure to satisfactorily perform job duties and responsibilities"; "Employees shall not refuse to work as directed or refuse to perform assigned job; "#26 Other conduct or neglect of duties determined to be detrimental to the welfare of residents." (Doc. 17 Ex. C at 7.)

4

"bad faith," SEIU also seeks attorneys' fees pursuant to the LMRA. In response, St. Mary's asks the Court to vacate the arbitrator's award. St. Mary's argues that the award must be vacated because the arbitrator exceeded his authority and his decision is contrary to public policy.[2]

## Standard of Review and Analysis

The Sixth Circuit recently summarized the criteria that guides a court's "limited role when asked to review the decision of an arbitrator" in *Totes Isotoner Corporation v. International Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (2008). The court provided:

> It is well-established that an arbitrator's award is legitimate and must be upheld where it is drawn from the collective bargaining agreement and the issues submitted for determination by the parties. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960). So long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L.Ed.2d 740 (2001) . . . Indeed, "because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L.Ed.2d

---

[2]St. Mary's argues that the arbitrator's decision is contrary to public policy because it threatens a nursing home's ability to provide a safe environment and maintain adequate staffing. In other words, St. Mary contends that sleeping employees create a safety risk for nursing home residents.

5

> 286 (1987). Consequently, "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id*. at 36, 108 S. Ct. 364.
>
> . . . However, an arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Misco*, 484 U.S. at 38, 108 S. Ct. 364. "When the arbitrator's words manifest an infidelity to this obligation," the scope of the arbitrator's authority has been exceeded and "courts have no choice but to refuse enforcement of the award." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S. Ct. 1358.

*Totes Isotoner*, 532 F.3d at 411. Prior to *Totes Isotoner*, the Sixth Circuit had provided courts with specific guidance for determining when an arbitrator has exceeded his or her authority in *Michigan Family Resources, Inc v. Service Employees International Union Local 517M*, 475 F.3d 746 (2007) (en banc).

In *Michigan Family Resources*, the court set forth three questions a court should ask to determine whether the arbitrator exceeded his or her authority and caused a "procedural aberration" justifying reversal:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

475 F.3d at 753. The Sixth Circuit advised that "[s]o long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the

6

merits of the dispute." *Id.*

The last question or requirement– whether the arbitrator was "arguably construing or applying the contract"– derives from the rule that "an arbitrator's award 'must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.'" *Totes Isotoner, supra* (quoting *Misco*, 484 U.S. at 38, 108 S. Ct. 364.) An arbitrator must "pa[y] heed to the 'plain and ambiguous provisions' of the collective bargaining agreement." *Gen. Drivers, Warehousemen & Helpers, Local 89 v. Willamette Indus., Inc.*, No. 98-5476, 1999 WL 503465, at *4 (6th Cir. 1999) (quoting *Local 120, Int'l Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286 (6th Cir. 1990)). The arbitrator's decision "could be so 'ignorant' of the contract's 'plain language,' . . . as to make implausible any contention that the arbitrator was construing the contract." *Michigan Family Res.*, 475 F.3d at 753 (quoting *Misco*, 475 F.3d at 753.) Stated differently, "[a]n interpretation of a contract . . . could be 'so untethered to' the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation." *Id.* (quoting *Garvey*, 532 U.S. at 512, 121 S. Ct. 1724 (Stevens, J., dissenting)).

Turning to the present matter, this Court finds that the arbitrator's award failed to draw its essence from the CBA. The arbitrator concluded that St. Mary's proved by a preponderance of the evidence that McCurrie was asleep on the job and he acknowledged that St. Mary's employee handbook provided for immediate discharge for this offense. Nevertheless, he concluded that St. Mary's penalty was "inappropriate" in light of

7

mitigating factors. He therefore set aside the discharge. The arbitrator was not "arguably construing or applying the contract" when he reached this conclusion; rather, he simply was ignoring the contract and substituting his "own notions of industrial justice." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371.

As set forth earlier, the CBA expressly provided that the arbitrator lacked the power to substitute his discretion for that of St. Mary's in cases where the agreement provided St. Mary's with "sole discretion to act". (Doc. 17, Ex. A at 15.) Under the CBA, St. Mary's "retain[ed] the exclusive right" to "discharge and discipline employees for just cause" and to "[e]stablish[,] post and enforce reasonable rules and regulations governing the conduct and acts of employees during working hours." (Doc. 17, Ex. A at 8.) Therefore, when the arbitrator found McCurrie guilty of sleeping on the job, he exceeded his authority when he substituted his sense of justice as to what the appropriate penalty should be. Accordingly, this is one of "the rare case[s]" where the court has the authority to hold that the arbitrator's decision is unenforceable. *See Int'l B'hood of Elec. Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208 (6th Cir. 1989) (holding that, once the union stipulated that employees engaged in misconduct warranting discharge under the collective bargaining agreement, the arbitrator lacked the authority to overturn the employer's decision to discharge the employees); *Willamette Industries*, 1999 WL 503465, at *4-5 (affirming the district court's decision to vacate the arbitrator's award because the arbitrator substituted his judgment for that reserved to the employer in the collective bargaining agreement to establish rules and appropriate penalties for violations

8

thereof).

Having concluded that the arbitrator exceeded his authority when he overturned McCurrie's discharge, the Court concludes that the arbitration award must be vacated. The Court therefore finds it unnecessary to decide whether the arbitrator's decision should be vacated on public policy grounds and rejects SEIU's request for attorneys' fees.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion to Confirm Arbitration Award and for Summary Judgment as to Plaintiff's Claim is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant's Motion to Vacate Arbitration Award and Summary Judgment as to Plaintiff's Claims is **GRANTED**;

**IT IS FURTHER ORDERED**, that the arbitrator's award of January 20, 2009 is **VACATED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Meagan Dolleris, Esq.
Karen B. Berkery, Esq.
Teri L. Dennings, Esq.